THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID SANCHEZ, Defendant-Appellant.

First District (4th Division)    No. 79-1084

Opinion filed May 21, 1981.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Noble Nacev, and Ann L. Benedek, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

At the conclusion of a jury trial in the circuit court of Cook County, defendant David Sanchez was found guilty of rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1) and of indecent liberties with a child (Ill. Rev. Stat. 1979, ch. 38, par. 11—4). Judgment against defendant was entered on both offenses, but he was sentenced only for rape to a term of 10 to 30 years.

*Issues Presented*

On appeal, defendant contends: (1) he was not proven guilty beyond a reasonable doubt; (2) the trial court committed reversible error by preventing him from testifying about his efforts to prevent his deportation to Mexico; (3) the trial court committed reversible error by inquiring into the numerical division of the jury after the jury had reported it was deadlocked; and (4) his sentence is excessive. Defendant also contends his conviction for taking indecent liberties with a child must be vacated because it was based on the same act as his rape conviction. The State has joined defendant in this contention and requests that we vacate the indecent liberties conviction and modify the judgment accordingly. See *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.

*Disposition*

We vacate the indecent liberties conviction. We affirm the rape conviction and the sentence imposed for that offense.

*Evidence*

The incident occurred in the afternoon of November 13, 1977. The victim was a 10-year-old who lived with her mother and six brothers and sisters in a home in Chicago Heights. At the time of the incident, the mother and some of the children had been out of town for two weeks but were due to return that day. During this two-week interval, defendant and his wife were staying at the home to care for the remaining children. Defendant's infant child was also staying at the home. Defendant and the victim's mother were long-time friends.

From the evidence presented at trial, the following was shown to have occurred.

At approximately 2 p.m. on the day of the incident, the only persons in the home were defendant, defendant's infant child, and the victim. The victim was in the living room watching television. The infant was asleep on the couch. Defendant was asleep on a bed in the only bedroom.

The victim decided to carry the sleeping infant to one of the beds in the bedroom. Upon doing so, defendant awoke and asked the victim to get him a glass of water. She did as requested and upon returning, she was grabbed by defendant and thrown onto a bed. Defendant removed his underwear, the only thing he was wearing, and then proceeded to lift the victim's dress above her waist and pulled off her underwear. The defendant pounced on top of the victim and went "up and down" on top of her and she felt something "cold and hard" inside her. The victim cried out and kicked at defendant to no avail.

While this was going on, the victim's mother returned from her trip. She came into the home and saw the bedroom door closed. She swung the door open and saw defendant on top of the victim. Defendant got up and the victim ran crying to her mother. The mother instructed the victim to get dressed and go out and wait in the car. The victim did as instructed. The mother immediately telephoned the police. The police arrived in less than a minute. They arrested defendant, who was getting dressed when they arrived.

OPINION

I

*Reasonable Doubt*

Defendant first contends he was not proven guilty beyond a reasonable doubt. Besides the victim's and the mother's testimony, there was

testimony of a doctor who examined the victim after the episode. His testimony supported a conclusion that the victim had been raped. However, defendant points to several pieces of evidence which tended to attack the credibility of the victim and the mother, and points to his own testimony which denied any sexual attack.

We need not detail all of the discrepancies in testimony pointed out by defendant. It is sufficient to note that the issue raised by defendant is simply one of the credibility of the principal witnesses, and it was for the trier of fact to determine whose account of the event was to be believed. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) Our examination of the record shows there was ample evidence presented to support the jury's determination that defendant was guilty beyond a reasonable doubt of the offense of rape.

## II

### Excluded Evidence

Defendant next contends the trial court committed reversible error by preventing him from presenting evidence concerning his effort to avoid his deportation to Mexico. While the trial of this case was pending, the Federal Government was carrying on proceedings to have defendant deported to Mexico. Defendant was contesting the government's efforts. Defendant wanted to present evidence showing he was contesting his deportation. The trial court granted the State's motion in limine to prevent such evidence from being presented.

Defendant's argument is that the trial court should have allowed all relevant evidence to be presented in his behalf. As to the issue of relevancy, defendant contends that he wanted to move back to Mexico but that he was contesting his deportation so he could stay in the Chicago area until the criminal proceedings against him were resolved. This, according to defendant, tended to show he was innocent of the alleged offense and was thus relevant evidence.

■■ Defendant's relevancy argument is attenuated at best. Nevertheless, the trial court prevented him from presenting the evidence not only because the trial court believed it irrelevant but also because the trial court believed such evidence would have harmed defendant more than it could have helped. The trial court said that such evidence would give the jury the impression that defendant was an undesirable alien and, as a result, the jury could be prejudiced against him. Because of this, we believe the trial court did not abuse its discretion by declaring the evidence inadmissible. Also, it is clear from the record that even if the evidence had been admitted it could not possibly have changed the outcome of the trial.

## III

*Jury Division*

Defendant next contends that the trial court's inquiry into the numerical division of the jury after the jury had reported it was deadlocked was reversible error.

Approximately two hours after the jury had begun deliberations, it sent word to the court that it was unable to reach a verdict. The jury was brought back into court and upon inquiry the court discovered the following. First, the jury had taken only one vote. Second, some of the jurors believed that with further deliberations a verdict could be reached. Third, the one vote taken had produced a nine to three division on a verdict.

Upon learning these facts, the trial court gave the jury the *Prim* instruction and the jury went out to deliberate further. (See *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Two hours later, the jury sent word that it was still deadlocked. The trial court sent a two word message to the jury stating, "Keep deliberating." Two hours later a guilty verdict was returned.

■■ This court adheres to the position that it is error for the trial court to inquire into the numerical division of a jury. However, this court also adheres to the position that such error is not reversible per se, and unless defendant can show that the inquiry into numerical division interfered with the deliberations of the jury to the prejudice of defendant or hastened the verdict, such error is not reversible. *People v. Kirk* (1979), 76 Ill. App. 3d 459, 394 N.E.2d 1212.

Defendant contends that the inquiry into numerical division considered in light of other facts in this case shows that he was prejudiced by the inquiry. He alleges that the giving of the *Prim* instruction after the inquiry, and the giving of the further instruction to "keep deliberating" when the jury was later found to be still deadlocked, indicates that the jurors were undoubtedly given the impression that the trial court was ordering them to reach a verdict and was not going to let them leave unless a unanimous verdict was returned. Since the trial court had learned that the vote was nine to three, because of the above additional factors, the jury was left with the impression that the court wanted the three jurors in the minority to change their mind.

Nothing in the trial court's conduct indicates that it was ordering the jury to reach a unanimous verdict. Also, after the inquiry into the numerical division and the giving of the *Prim* instruction, the jury continued deliberations for two hours and indicated it was still deadlocked. Clearly, the jury did not hasten its verdict as a result of the initial

inquiry, and thus the inquiry into numerical division had little effect on the jury. Additionally, after the court told the jury to "keep deliberating," the jurors took another two hours before reaching a verdict, indicating that they reached a verdict after careful deliberation and not as a result of any alleged coercion from the trial court. Hence, we believe that the trial court's inquiring into the numerical division of the jury along with the court's overall conduct did not result in coercing the jury to reach a verdict, and we find defendant's contention is without merit.

## IV

*Sentence*

■■ Defendant's final contention is that his sentence of 10 to 30 years is excessive. Defendant points to an isolated remark by the trial court that one of the purposes of sentencing is to deter others from committing the offense. Defendant claims that the sentence given was based principally on the trial court's desire to deter others from committing the crime. However, the record indicates that the trial court considered all the necessary aggravating and mitigating factors concerning the case and defendant in general, and we find no abuse of discretion in the trial court's setting the sentence as it did.

*Conclusion*

For the reasons noted, we affirm defendant's conviction and sentence for rape. Pursuant to the State's request, we vacate defendant's conviction for indecent liberties with a child.

Affirmed as modified.

ROMITI, P. J., and JIGANTI, J., concur.