THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GREGORY S. GRIGGS, Defendant-Appellant.

Fifth District   No. 83—167

Opinion filed August 8, 1984.

Randy E. Blue and Kim G. Noffke, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Defendant, Gregory S. Griggs, was charged by indictment in the circuit court of St. Clair County with murder. A jury, after more than nine hours of deliberation, returned a verdict finding him guilty of the

lesser offense of voluntary manslaughter. Defendant was sentenced to the Department of Corrections for a term of six years' imprisonment. Defendant alleges reversible error in that the trial court coerced and unduly hastened a verdict by inquiring of the jury its numerical division after eight hours of deliberation and, after learning that seven of the jurors thought that no verdict could be reached, nevertheless returned the jury to deliberation and refused the State's request for a deadlocked jury instruction in accordance with the supreme court's directive in *People v. Prim* (1972), 53 Ill. 2d 62, 71-77, 289 N.E. 2d 601, 607-10, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731. Defendant also contends that the trial court abused its discretion in sentencing.

The underlying facts pertinent here are stated simply. Griggs returned home and found there his cousin, Barbara Davis, and the Chandlers, Gene, Harvey and Luther. Gene Chandler approached Griggs. Hostile words were exchanged, tempers flared and a fight broke out between them. Harvey, Luther and Davis intervened. The fighters were separated for a very short time, then shots were fired. Gene Chandler died from a gunshot wound in the chest. Some evidence tended to establish self-defense.

The jury was instructed about the applicable law and retired to deliberate its verdict at 1:25 p.m.

At 9:45 p.m. the court called counsel into chambers and proposed to call the jury into the courtroom to ask its members the following questions:

"Without giving the results of any vote, approximately how many votes have been taken; ***.

Second, without giving the results of any votes, guilty or not guilty, what was the numerical breakdown on the last vote, ***.

Third, if the Court was to ask you to continue your deliberations, do you feel there is a reasonable probability you might yet be able to arrive at a verdict.

If the foreperson answers no to that question, I will ask each juror, if the Court was to ask you to continue your deliberations, do you feel there is a reasonable probability you might be able to arrive at a verdict, I will ask them to respond to that question, yes, no, or maybe."

The State voiced no objection but requested that the instruction mandated by *Prim* be given first. The State's request was denied. Defense counsel objected "to giving any further questions or instructions at this point." When asked how long the court should allow the jury to deliberate, the State suggested "another hour or two" if a majority

thought a verdict could be reached. Defense counsel suggested no time limit be imposed. The court concluded: "If there is an indication they can, or that there is a reasonable probability they can reach a verdict, I will give them [from 10:20 p.m.] until midnight to make a decision, and at that time I will declare a mistrial."

The jury was called in. The foreman responded to question one, "Well, one written and quite a few hand votes." The foreman responded to question two, "About seven to five." The foreman responded to question three, "I doubt it." Then the court asked question three to each juror. Seven jurors responded "no," two jurors responded "yes," and three jurors responded "maybe," including the foreman. The court addressed the jury: "In view of the fact you are divided on the question of whether you can or cannot reach a verdict, I will ask you to continue your deliberations. So, court will be in recess."

Approximately 1¼ hours later, without further instruction, the jury returned its verdict guilty of voluntary manslaughter. Defendant refused the court's offer to poll the jury.

Essentially we must determine whether the trial court interfered with the deliberation of the jury to defendant's prejudice. We will not consider defendant's position on appeal regarding the necessity of a *Prim* instruction for two reasons. First, his position on appeal is inconsistent with his argument at trial, where counsel insisted that no further instruction of any kind be given. Second, the decision of whether to give the supplemental instruction to a deadlocked jury rests within the sound discretion of the trial court. (*People v. Thompson* (1981), 93 Ill. App. 3d 995, 1008, 418 N.E.2d 112, 122.) It is not at all clear that this is a case where the jury was in fact deadlocked, for it is clear that at least five jurors thought that a verdict might yet be reached. While the instruction can be given even if the jury is not deadlocked (see *People v. Wilson* (1976), 37 Ill. App. 3d 560, 346 N.E.2d 161), here it does not appear to have been required. We will, therefore, limit our review of the proceedings to an examination of the actual dialogue claimed to be prejudicial and not whether a supplemental *Prim* instruction should have been given.

Defendant relies on *People v. Golub* (1929), 333 Ill. 554, 165 N.E. 196, *People v. Duszkewycz* (1963), 27 Ill. 2d 257, 189 N.E.2d 299, *People v. Rohwedder* (1967), 78 Ill. App. 2d 211, 223 N.E.2d 1, and *People v. Santiago* (1982), 108 Ill. App. 3d 787, 439 N.E.2d 984.

The supreme court in *Golub* said:

"A verdict should express the deliberate judgment of the jury. The juror, as well as the judge, has an independent duty to per-

form, and he ought to be left free to pronounce his own conviction. A verdict hastened by the action of the judge, however worthy the motive, cannot be the result of that deliberation which the law guarantees. Remarks by a trial judge calculated to effect the rendition of a verdict without affording the jury an opportunity for careful consideration are unwarranted and often lead to great abuse. Whether the error is harmless or prejudicial depends upon the facts of the case." *People v. Golub* (1929), 333 Ill. 554, 561, 165 N.E. 196, 199.

In *Golub*, the trial court had proceeded in much the same way as the trial court here. The foreman replied, "Nine to three." The court then said, "You ought not to have any difficulty in reaching a verdict on this evidence." The jury retired a second time and later, a period of time not reported, returned a verdict finding both defendants guilty. The supreme court held that the trial court's remarks "did not, either expressly or by implication, indicate that the jury should reach a particular conclusion. *** The remarks should not have been made, yet it cannot be said that they interfered with the deliberations of the jurors to the prejudice of plaintiff in error or that they hastened the verdict." 333 Ill. 554, 561, 165 N.E. 196, 199.

In *Duszkewycz*, the trial judge asked the foreman for the vote. He replied, "Eight-four, sir," without indicating how the jurors were divided. The judge asked whether the jury could reach a verdict within one hour. The foreman replied negatively, whereupon the court sent the jury back to deliberate for one hour and told the jurors, "[s]ee if you can't reach a verdict." An hour later the jury was recalled and sent to dinner, after which it continued deliberations. Later that night, after a further interval of unknown duration, the jury returned verdicts of guilty. As in *Golub*, the court found no evidence that the verdicts had been coerced.

In *Rohwedder*, the court held that the defendant had a right to be present when the court summoned the jury before it for inquiry, as this was a stage of his trial. In this regard, the appellate court's remarks concerning prejudice to the defendant resulting from certain communications between the jury and the court outside of his presence must be viewed in context. *Rohwedder* is not applicable here.

In *Santiago*, the jury sent a note to the court stating that it was deadlocked. The jury was called in for its numerical division and the foreman responded, "Eight and four." The court then gave a *Prim* instruction and the jury retired for further deliberations. The jury was repeatedly called into court over a period of four days of deliberation. At one point the numerical division was eleven and one and the court

returned the jury to deliberate further. Finally, the jury returned its verdict guilty. The appellate court distinguished *Golub* and *Duszkewycz* and found that the trial court coerced the minority of the jurors into returning a verdict of guilty. The court said:

"[T]here were a number of factors present in the case before us which, taken together, suggest that prejudicial error occurred. Twice the trial judge improperly asked for the numerical division of the jury and the second inquiry, which reflected an eleven to one split, was made after the judge already knew that the jury had divided eight to four in favor of returning a verdict of guilty; immediately after he first discovered that the jury was divided in favor of a verdict of guilty, the trial judge gave the jury a *Prim* instruction which, *inter alia*, urged the jurors to reach an agreement; on the fourth day of deliberations the jury was called into court three times at the insistence of the judge who repeatedly questioned the foreman regarding the state of deliberations; over the course of the deliberations the foreman indicated that the jury was deadlocked and that further deliberations might not help. By virtue of the trial court's actions in this case, the jury may well have believed that the court concurred with the majority and that deliberations would continue until a unanimous verdict of guilty was returned. Such a verdict cannot be said to have been reached without improper prodding from the trial court and should not be allowed to stand." (*People v. Santiago* (1982), 108 Ill. App. 3d 787, 806-07, 439 N.E.2d 984, 997-98.)

In one of its footnotes the court quoted the Supreme Court of California, which stated that " '[m]ost cases wherein adjuratory remarks of the court have been held coercive are those in which the court, either through its own questioning or through volunteered statements of jurors, has become informed not only as to the numerical division of the jury but also as to how many stand on each side of the ultimate issue of guilt. The urging of agreement in such circumstances of course creates in the jury the impression that the court, which has also heard the testimony in the case, agrees with the majority of the jurors. Coercion of the jurors in the minority clearly results.' " 108 Ill. App. 3d 787, 807 n.4, 439 N.E.2d 984, 997-98 n.4, quoting *People v. Carter* (1968), 68 Cal. 2d 810, 816, 442 P.2d 353, 357, 69 Cal. Rptr. 297, 301.

In the instant case we do not find the same compelling reasons for reversal that the court found in *Santiago*. Rather, the facts before us are more closely related to those found in *Golub* and *Duszkewycz* where harmless error was found. While it is error for the

trial court to inquire into the numerical division of the jury (*People v. Sanchez* (1981), 96 Ill. App. 3d 774, 422 N.E.2d 58), it is not *per se* reversible error in Illinois. *(People v. Santiago* (1982), 108 Ill. App. 3d 787, 439 N.E.2d 984.) Unless the defendant can show that the inquiry into numerical division interfered with the deliberations of the jury to his prejudice or hastened the verdict, such error is not reversible. (*People v. Kirk* (1979), 76 Ill. App. 3d 459, 394 N.E.2d 1212, *cert. denied,* (1980), 447 U.S. 925, 65 L. Ed. 2d 1118, 100 S. Ct. 3019. See also *People v. Green* (1980), 91 Ill. App. 3d 1085, 415 N.E.2d 595.) The defendant has not shown either.

■ Here, the hour was getting late and the trial court was obviously concerned about whether the jury might have reached an impasse. The foreman assessed the situation and concluded it was unlikely that a verdict could be reached. Each juror was then polled with the same, rather ambiguous question: "If you were to continue your deliberations, do you think you would be able to reach a verdict [?] ***." An examination of the record does not disclose whether each juror was representing his or her own personal vote or representing a personal assessment of the collective probability of reaching a verdict. The trial court had no idea about which position the majority represented. Also, there is no basis in the record for us to conclude that the majority vote at that time turned out to be the verdict reached. The trial court received no assurance that a verdict could not be reached but instead discovered that the 12 jurors could not agree on whether they could agree on a verdict. Thus, the situation after eight hours of deliberation was not much different than the situation was when the jury first retired. Consequently, they were returned to deliberation without further instruction. As noted previously, it was a matter of discretion whether to give a *Prim* instruction and this discretion was not abused. The court had indicated beforehand, unknown to the jury, that deliberations would end at midnight and a mistrial would be declared if the jury failed to return by then. In short, we find no coercion or undue hastening of the verdict under these facts.

■ Defendant contends that the trial court abused its discretion in sentencing defendant to a term of six years' imprisonment for his voluntary manslaughter conviction. He prays for a reduction of his sentence "to reflect his rehabilitative potential" or alternatively a new sentencing hearing. Defendant has not offered a specific alternative disposition here, but we note that he argued for probation in the trial court. The State recommended 12 years' imprisonment.

Voluntary manslaughter is a Class 1 felony. (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(c).) A period of probation is an authorized disposition

option for a Class 1 felony conviction under these circumstances. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3(b).) The trial court clearly rejected this option after considering the nature and circumstances of the offense and the history, character and condition of the offender. The court concluded that imprisonment was necessary for the protection of the public and that probation would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—1(a).) The record does not support defendant's contention that the trial court "ignored several factors raised in mitigation." The court stated that it considered the factors in aggravation and mitigation brought to its attention.

Also, the court stated that it made an independent consideration of all factors, including but not limited to the one factor in mitigation specifically mentioned: defendant's age, 18 years. Thus it appears that proper consideration was given to defendant's argument that he did not contemplate that his criminal conduct would threaten or cause serious physical harm to another; that he acted under strong provocation; that there were substantial grounds to excuse his conduct; that he has no history of prior convictions; that his criminal conduct was the result of circumstances unlikely to recur; that he is unlikely to commit another crime; and that he is likely to comply with the terms of probation. It also appears that proper consideration was given to the State's argument that the defendant's conduct caused serious harm; that there was no serious provocation involved; that a sentence of imprisonment was necessary to deter others from committing the same crime; that he has a history of juvenile delinquency; and that he is unlikely to comply with the terms of probation.

Where there are factors present both in mitigation and aggravation it is the duty of the trial court to weigh these factors and reach a decision as to an appropriate sentence. The range of imprisonment for conviction for a Class 1 felony extends from a possible minimum term of 4 years to a possible maximum term of 15 years. Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(4).

We do not find that the sentence imposed upon the defendant constitutes a great departure from the law, its spirit and purpose, or that it violates the intent and mandate set forth in article I, section 11 of the Constitution of the State of Illinois. The trial court's decision in regard to sentencing is entitled to great deference and weight. Absent an abuse of discretion a sentence may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) We find no abuse of discretion and therefore affirm the sentence imposed.

484

For all of the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

JONES and HARRISON, JJ., concur.