THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PAUL W. SCHAFF, Defendant-Appellant.

First District (4th Division)   No. 1—90—3190

Opinion filed June 10, 1993.

Stephen M. Komie and Robert S. Bailey, both of Komie & Associates, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and David Stabrawa, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, defendant, Paul Schaff, was convicted of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1)), and criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(2)), of a seven-year-old boy. He was subsequently sentenced to a 10-year term in the Illinois Department of Corrections.

On appeal, defendant contends (1) the trial court's supplemental instruction to the jury was coercive and that the trial court's inquiry into the numerical breakdown of the jury during deliberations prejudiced him, and (2) the jury's awareness of extraneous prejudicial information denied him a fair trial.

We affirm.

At 4:30 p.m. on June 25, 1990, the first day of deliberations, the jury sent the trial judge a note stating, "Please provide us with available transcripts." The trial judge told the jury to continue with deliberations. The following day, June 26, 1990, at 8:05 a.m., the trial judge received another note from the jury which asked for the "legal description or legal definition of reasonable doubt." The jury was again told to continue to deliberate. At 10:05 a.m., the jury sent another note inquiring as to options other than guilty or not guilty. The trial judge responded: "Please continue to deliberate."

At 11:40 a.m., defense counsel made a motion for a mistrial because the jury was under the misapprehension that it had to reach a verdict. Judge Pope, substituting for the judge who presided at trial, conferred with the absent judge, who instructed him that the jury should deliberate into the lunch hour. The motion for a mistrial was denied.

After lunch, the court reconvened at 1:30 p.m. whereupon defense counsel again requested a mistrial. The jury was brought out and the foreperson stated that he did not believe it reasonably probable that a verdict could be reached. He also agreed that a further jury instruction would be of no assistance in arriving at a verdict. The trial court inquired into the number of ballots taken thus far and the foreperson indicated that six ballots had been taken. The trial court then asked for the numerical breakdown of the last ballot without providing an indication of which side was favored. The foreperson stated that the count was 7 to 5 and that further deliberations were not likely to result in a verdict.

At approximately 1:40 p.m., the trial judge gave the jury a supplemental instruction and asked the jury to resume deliberations. De-

fense counsel then made another motion for a mistrial. The motion was denied, and the trial judge stated that the jury was to deliberate until 3 p.m.

At 3:45 p.m., the judge who presided at trial had returned, and defense counsel requested a mistrial. The trial judge ordered that the jury be brought out so she could inquire as to its progress. The foreperson stated that the jury was still unable to reach a verdict. However, when asked if he felt that the jury was hopelessly deadlocked, he responded, "I would like another half-hour or so." The trial judge then asked him for the last count without indicating which side was favored. He stated that the count was 11 to 1. The jury was ordered to continue to deliberate and the motion for a mistrial was denied.

At this point, the record reflects that the jury had deliberated from 2 p.m. to 9 p.m. on June 25, 1990, allotting 1½ hours for dinner. The next day, the jury commenced deliberations at approximately 8:15 a.m., and shortly before 4 p.m. it still had not reached a verdict. When the half-hour previously requested by the foreperson had expired, defense counsel made a motion for a mistrial. The trial judge denied the motion but stated, "If they have not reached a verdict by 4:30 p.m., I will declare a mistrial."

At 4:22 p.m., the jury requested new verdict forms to fill out and defense counsel made another motion for a mistrial. The motion was denied and the verdict forms were tendered to the jury at approximately 4:30 p.m. About 10 minutes later, the jury was brought out and defendant was found guilty of aggravated criminal sexual assault and criminal sexual assault.

The trial judge delayed sentencing defendant and granted him a continuance to investigate the jury's possible exposure to extraneous prejudicial information prior to the rendition of the verdict.

An evidentiary hearing was conducted on September 14, 1990, to determine whether the jury possessed unauthorized prejudicial information which may have affected the verdict. Defendant subpoenaed two jurors to testify at the hearing. Juror Virginia Beatty testified she informed the court, in writing, that some jurors may have been aware of similar charges pending against defendant during deliberations. At the end of the trial, she stated that another juror approached her and stated that she overheard something in the courtroom which suggested that there were additional charges against defendant. Beatty testified that she believed the other juror's extraneous knowledge "had not affected her [the juror's] perception of the whole matter."

Juror Janet Johnson testified that prior to the trial's conclusion she overheard a child in the courtroom whisper to his mother, " 'Is this something I'll have to go through[?],' something to that effect." After the trial ended, she spoke with another juror who overheard the same statement. Johnson testified that nothing she overheard was discussed during deliberations and that she did not associate the statement's significance with defendant. She further stated that she did not know if the statement even related to defendant.

Following argument on both sides and after explicitly careful consideration, the trial court denied defendant's motion for a new trial. He was sentenced to a 10-year term of imprisonment in the Illinois Department of Corrections.

On appeal, defendant initially maintains that the trial court's supplemental instruction was coercive and prejudiced him. After the jury had taken six ballots, the foreperson expressed that he did not foresee a verdict resulting from continued deliberations. The trial court then gave the jury the following instruction:

> "The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous. It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberation, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous, but do not surrender because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. You are not partisans. You are the judges, judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case."

The jury was directed to resume deliberations.

In *People v. Prim* (1972), 53 Ill. 2d 62, our supreme court promulgated an instruction to be given to a deadlocked jury in order to facilitate the arrival at a verdict. The instant instruction differs from the *Prim* instruction in only one respect. Here, the instruction omitted the phrase, "But do not surrender your honest conviction as to the weight or effect of evidence ***." (*Prim*, 53 Ill. 2d at 76.) Defendant's assertion of coercion is grounded in this omission. He postulates that the trial court's failure to recite the precise *Prim* language resulted in the jury's arrival at an unduly pressured verdict. We disagree.

■ The instruction, while admittedly not identical to the one set out in *Prim*, was wholly free of coercion. The trial court's instruction cautioned the jurors, similar to the verbatim *Prim* instruction, not to abandon their beliefs simply to return a verdict. This is the crucial part of the instruction. We are manifestly aware of the impropriety of the emergence of a verdict from an unjustly influenced jury. After a careful review of the language of the instruction, we find no abuse of discretion.

Further, we accord due consideration to the three hours which transpired between the time the instruction was given and the next time the jury was summoned to the courtroom. During that interval, the jury had not reached a verdict. While not dispositive of the issue, we believe that the failure of the jury to reach a verdict three hours after being given the supplemental instruction is some evidence that the instruction failed to improperly pressure the jury.

■ Defendant also opines that he was prejudiced by the trial court's two inquiries into the numerical division of the jury. "While it is error for the trial court to inquire into the numerical division of the jury [citation], it is not *per se* reversible error in Illinois." (*People v. Griggs* (1984), 126 Ill. App. 3d 477, 481-82.) The trial court inquired as to the numerical breakdown, which was 7 to 5, before the jury was given a supplemental instruction at approximately 1:40 p.m. The trial court then ordered the jury to continue with deliberations.

At about 3:45 p.m., the trial court asked the foreperson if he felt that the jury was hopelessly deadlocked, and the foreperson responded that he "would like another half-hour or so." The trial court then requested the numerical division of the jury without inquiring as to which side was favored. The count was 11 to 1. The jury was directed to continue with deliberations. At 4:38 p.m., the jury returned guilty verdicts.

We believe that the trial judge's inquiries to the jury were not prejudicial. "Whether error is harmless or prejudicial depends upon the facts of the case." (*People v. Golub* (1929), 333 Ill. 554, 561.) Here, there was no threat of sequestration, the supplemental instruction was not coercive, and no time limit was placed on the jury for reaching a verdict. Furthermore, as the trial judge was never aware of which side the jury favored, we believe the inquiry was harmless. *People v. Logston* (1990), 196 Ill. App. 3d 30, 37.

Relatedly, the request for the numerical breakdown alone does not constitute prejudice. Instead, defendant must actively demonstrate that this request hastened or interfered with the verdict. (*People v. Griggs* (1984), 126 Ill. App. 3d 477, 482; see *People v. Green* (1980),

91 Ill. App. 3d 1085.) Defendant has failed to make this demonstration. Upon examination of the numerical breakdown inquiries correlative to the totality of the court's conduct (*People v. Sanchez* (1981), 96 Ill. App. 3d 774, 779), we find no prejudice.

■ Second, defendant contends that the jury's awareness of other similar charges against him precluded his right to a fair trial.

After the trial judge was apprised of the possibility that the jury was improperly influenced by information not in evidence, she conducted a presentencing, evidentiary hearing to determine whether jurors were tainted by unauthorized information which affected their perception of the case.

Defendant subpoenaed two jurors to testify at the hearing and, after their testimony concluded, the trial judge was convinced that defendant's right to a fair trial was preserved. Juror Virginia Beatty testified that another juror told her of the similar charges against defendant after the trial had ended. She stated that she did not believe the other juror considered those charges during deliberations. Juror Janet Johnson testified that, in the courtroom, she overheard a boy ask his mother, "Is this something I'll have to go through[?]" or words to that effect. She stated that she did not discuss this statement with any members of the jury prior to reaching a verdict. She also stated that she did not consider the statement during deliberations and that she did not even know if the statement pertained to defendant. The trial judge characterized the boy's statement as "pretty innocuous" and was generally satisfied that the jury was not prejudiced.

The determination of whether the jury was influenced by extraneous information is entirely within the province of the trial court which must infer, in view of the instant facts and circumstances, whether a fair trial has been impeded. This finding will not be disturbed absent an abuse of discretion. (*People v. Malmenato* (1958), 14 Ill. 2d 52, 63.) The testimony given at the evidentiary hearing clearly establishes that the jury was not improperly influenced by extraneous information. One juror was not even aware of the information until after the conclusion of the trial and the other simply overheard a statement from a boy to his mother in the courtroom which did not facially bear any relation to defendant. At the hearing, defendant did not offer any additional evidence of prejudice.

Based on the evidence presented we do not believe the trial judge abused her discretion in finding that defendant's right to a fair trial was safeguarded. "To warrant a reversal, it must reasonably appear that at least some of the jurors have been so influenced or prejudiced

that they cannot be fair and impartial." (*People v. Collins* (1979), 71 Ill. App. 3d 815, 823.) We believe that the evidence convincingly establishes the jury's impartiality. The trial court's resolution of this issue was not improper and was in complete accord with the evidence adduced.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and CAHILL, J., concur.