THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. IS-
MAEL ROMAN, Defendant-Appellant.

First District (3rd Division)   No. 1—91—0510

Opinion filed June 23, 1993.

Michael J. Pelletier and Sally A. Swiss, both of State Appellate De-
fender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb, Sari
London, and Guy L. Miller IV, Assistant State's Attorneys, of counsel),
for the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

Defendant, Ismael Roman, was sentenced to 40 years' imprisonment on the charge of first degree murder. On the evening of July 7, 1989, the victim, Aurelio Hernandez, was driving a car of three other passengers, all members of the gang known as the Simon City Royals. Defendant, a member of a rival gang, the Insane Unknowns, allegedly approached the victim's car, firing five rounds of ammunition into the car. Hernandez subsequently died from gunshot wounds.

The defense counsel at oral argument stood on its brief with the exception of the threats allegedly made by prosecution witnesses to defendant's common law wife. The trial judge presiding in this matter denied defense counsel an opportunity to examine two of the prosecution witnesses as to possible threats made by them to the defendant's common law wife. This court must decide if this excluded testimony deprived defendant of a fair trial.

██ The State argues that the suggested testimony was not probative and was irrelevant. The defense attorney's offer of proof indicates that Lozado, defendant's common law wife, would have testified that rival gang members Carlos Centera and Remy Suane, who were seated in the back seat of the victim's car, would take retribution against her if she testified and they would kill defendant if he was not convicted at trial.

Suane and Centera both testified on behalf of the State that defendant fired the fatal shots. The court indicated that any further information from the defendant on this issue would "clutter the record" of the proceeding. A witness can be impeached by showing interest, bias, or inclination to testify falsely. Further restricting impeachment of a witness by motive, bias, or interest may constitute reversible error. (*People v. Foley* (1982), 109 Ill. App. 3d 1010, 441 N.E.2d 655; *People v. Phillips* (1981), 95 Ill. App. 3d 1013, 420 N.E.2d 837.) In this particular case, the two witnesses who identified Ismael Roman as the killer could be considered to be biased, and this could have changed the verdict. This situation involved three men identifying the accused as the person who shot the victim. All three were the victim's friends, two of whom were gang members fighting against the gang of Ismael Roman. A clear motive to lie could be shown when considering that two of the identifying witnesses were part of a rival gang. This testimony ought to have been allowed to show that these two men had personal reasons to be at odds with the

defendant and that their identification of him was perhaps tainted by gang-related bias.

■■ This court finds that the declination of the court to allow this possible impeachment evidence was reversible error. Another issue presented is whether the judge persuaded the jury by actually inquiring about the jury count during deliberation. This kind of behavior is clearly beyond the realm of discretion allowed the judge while the jury is deliberating. In *People v. Santiago* (1982), 108 Ill. App. 3d 787, 439 N.E.2d 984, the judge indicated to counsel that he would give the *Prim*[1] instruction if a verdict was not reached within a certain time. Prejudice occurred when the court learned that the jury was split eight to four in favor of a guilty verdict and then, after giving the *Prim* instruction, the court asked for a further numerical division of the jury. In that case, the trial judge inquired into the jury count three more times before the jury returned a guilty verdict. Likewise, in *People v. Griggs* (1984), 126 Ill. App. 3d 477, 467 N.E.2d 397, the trial court appeared to be pressuring the undecided jurors to join the majority, who favored a guilty verdict, by counting the number of guilty versus not guilty votes. It could be said that the judge here tried to hasten the jury's verdict and this could have been a form of subtle persuasion. This was improper conduct by the trial court.

■■ As to the final issue, the State presented testimony by the victim's sister that the decedent was her little brother and that he was about to start attending Coyne Institute the following week. It would appear that this material was not presented in a fashion so as to merely identify a relationship to the decedent; it was presented with a view towards making this material appear to be material evidence. Given the closely balanced evidence in this case, this admission further warrants reversal. See *People v. Wilson* (1972), 51 Ill. 2d 302, 307-08, 281 N.E.2d 626, 629.

Finally, based upon the total accumulation of errors, this case must be reversed and this cause remanded to the circuit court of Cook County for a new trial with these admonitions to be followed by the trial court.

Reversed and remanded.

RIZZI and GREIMAN, JJ., concur.

---

[1] *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601. The *Prim* instruction is only to be given where the jury is hopelessly deadlocked.