THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT WILSON, Defendant-Appellant.

Second District (2nd Division)    No. 74-309

Opinion filed April 21, 1976.

Ralph Ruebner and J. Daniel Stewart, both of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Edward N. Morris and Christine M. Drucker, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Defendant Robert Wilson was indicted, along with five others, by a Lake County grand jury for the murder and armed robbery of William Richter and attempt murder of James Davis. Wilson was tried separately, and the jury returned verdicts of guilty on all three counts. Defendant was sentenced to three concurrent 20- to 60-year sentences, and now appeals his convictions and sentences on three separate grounds.

The defendant's first contention is that the court's giving of the so called *Prim* instruction to the jury without first determining if the jury was deadlocked deprived the defendant of a fair trial by its coercive effect on the jury. The circumstances of this case however show the court did not err in giving the instruction. The jury was given the case on October 19, 1973, and deliberated 5 hours that day. They then deliberated 4 hours on the morning of October 20, and 2 hours that afternoon, before sending the court a question concerning the issue of accountability at 3:25 p.m. At this point, the defendant moved for a mistrial which the court denied. The court then told both parties of the question it had received from the jury, and that it would instruct the jury to reread their instructions. The court further told counsels that it proposed to give the *Prim* instruction, stating that "under the circumstances, after this length of time, the court has an obligation under the *Prim* case to inquire of the jury whether or not they reasonably can reach a verdict and if the answer is either ambiguous or no, then the court will read them the *Prim* instruction." Defendant objected to the giving of the instruction under any circumstances, and the State expressed the opinion that the court should first inquire as to whether or not the jury could reach a verdict.

When the jury was brought out, the court, after dealing with the accountability question, asked the foreman, "Do you reasonably feel that your jurors will reach a verdict." The foreman replied "yes" and the jury returned to its deliberations.

At 6:40 p.m., after 14 hours of deliberation, the court again stated its intention to give the *Prim* instruction over defendant's objection. The jury was then brought to the courtroom, and instructed by the court as follows:

"The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course

of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict."

The jury then went to dinner, returning at 8:45 p.m. At 9:45 p.m., the court asked the foreman: "Do you reasonably believe that the jury will reach any verdict at all?" to which the foreman replied yes. The court then asked: "Within a reasonable time?" and the foreman again answered yes. At 11:45 p.m., the jury returned its verdicts.

■■■ We do not agree with defendant's contention that the giving of the instruction was premature and coercive. The question of what interval of time it is reasonable to permit the deliberations to continue in any case is a matter peculiarly within the discretion of the trial court. (*People v. Anthony* (1975), 30 Ill. App. 3d 464.) Although the trial of this case took only 10 hours, the jury had to wrestle with the complex issue of accountability. The court first inquired as to whether or not they thought they could reach a verdict after 11 hours of deliberations, and then gave the instruction after 14 hours. The jury deliberated nearly 3 hours more before giving their verdicts. The test is whether, upon examination of all the facts, the language used in the instruction coerced or interfered with the deliberation of the jurors to the prejudice of the defendant or hastened the verdict. (*People v. Iverson* (1973), 9 Ill. App. 3d 706, 709; *People v. Prim* (1972), 53 Ill. 2d 62, 77.) The language of the instruction given was not coercive; it was in conformity with the instruction directed by the Illinois Supreme Court in *People v. Prim.* It did not contain any "heed the majority" or "necessity for retrial" language, and thus is distinguishable from the instruction given in the case cited by defendant, *People v. Jackson* (1975), 26 Ill. App. 3d 618, which contained the latter.

In the instant case we hold that the giving of the *Prim* instruction was not error. The court first ascertained that the jury was not hopelessly deadlocked, and did not abuse its discretion in inferring that the jury was having some difficulty, requiring guidance from the court. We do not find the language or circumstances to have been coercive, nor do we see any evidence that it interfered with the deliberations or hastened the verdict to the prejudice of the defendant.

Defendant's second contention is that his armed robbery conviction must be reversed because the State did not prove an essential element of robbery, that any property was taken from the person or presence of Richter, beyond a reasonable doubt. The only evidence introduced concerning the robbery was circumstantial. Although defendant did not testify, statements he had earlier given the State's Attorneys at Lake County and Cook County were read to the jury. In these statements

defendant admitted that he was in one of two cars full of men who drove from Chicago to the Edens Expressway with the intention to rob truck drivers parked along the expressway. Defendant was armed, as were the other three men in the car he was in, and as to the other car he "didn't know who had what gun there." When they saw trucks and stopped, defendant and the others in his car approached a semi-trailer truck and awakened the driver, James Davis, who then drove away as shots were being fired at his truck. Defendant and the others were returning to their car when defendant heard shots coming from the area of the pickup truck behind him, which was being dealt on by the occupants of the other car. As defendant was driving past the scene during their getaway he saw the driver of the pickup truck, William Richter, had been shot. There was no evidence from defendant as to whether or not Richter had been robbed. Both sides stipulated to the testimony of Butch Jackson, the driver of the car defendant was in, that in Jackson's presence no one in his car ever received any proceeds from the alleged robbery of Richter.

The police testified that upon arriving at the scene, they found Richter's wallet lying on the floor of the pickup beneath the steering post, and that it contained Richter's identification cards but no money and no fingerprints. When the police were given all of Richter's personal effects at the hospital, they received only clothes; no rings, watch or other valuables. The State called as a witness John Churchill who had ridden with Richter that day from Fort Campbell, Kentucky, who testified that Richter had dropped him off in Chicago Heights and was continuing on to Wisconsin to meet his fiancee. Churchill was not asked if he knew whether or not Richter was carrying any money.

■■ While robbery may be proved by circumstantial evidence, in order to sustain a conviction based on such evidence, the evidence adduced must be of a conclusive nature and produce a reasonable and moral certainty that the offense charged was actually committed. (*People v. Ohle* (1951), 408 Ill. 238; 32 Ill. L.&Pr. *Robbery* §9 (1957).) The commission of a robbery is sufficiently established by proof that the victim had valuables on his person at the time of being assaulted, beaten and rendered unconscious, and that they were missing when he regained consciousness. (67 Am. Jur. 2d *Robbery* §59 (1973); see also *People v. Edwards* (1973), 55 Ill. 2d 25; *People v. Whitley* (1974), 18 Ill. App. 3d 995.) In the instant case we have an expressed intention to rob a man who was shot and an empty wallet. There is no direct testimony that the victim had possessed money, but the jury drew the inference that someone traveling several hundred miles on the highway would have some money on him. We think the circumstantial evidence in this case is sufficient to support the jury's verdict, and therefore affirm defendant's armed robbery conviction.

Defendant's final contention of error concerns his sentence. At the sentencing hearing January 29, 1974, at which defendant was present with counsel, the court sentenced defendant to:

"* * *a term of not less than 20 nor more than 60 years, the sentence which will be imposed will be considered to be concurrent on all the matters that are concerned and all the convictions which have been entered.

I think it is clear under the statute that one sentence in this situation should be given."

Notice of appeal was filed the same day.

The mittimus filed January 29, 1974, stated the term of imprisonment to be "minimum twenty (20) years—maximum sixty (60) years." The court then entered an amended mittimus February 23, 1974, fixing the term of imprisonment at "minimum twenty (20) years—maximum sixty (60) years each as to charge of murder, attempt to commit murder, armed robbery—sentences to be served concurrently."

■■ We find no merit in defendant's contention that this constituted the imposition of additional sentences such that defendant would be entitled to a hearing with counsel present. We find this to be a correction of the record, jurisdiction for which is retained by the trial court after a notice of appeal is filed. *(People v. Glenn* (1962), 25 Ill. 2d 82.) The amended mittimus filed in February was a clarification of the court's somewhat confusing pronouncement in January that it was imposing three concurrent 20- to 60-year sentences, which had mistakenly been entered as one 20- to 60-year sentence on the January mittimus.

For the foregoing reasons, judgment of trial court is affirmed.

Judgment affirmed.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.