THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN GREEN, Defendant-Appellant.

First District (1st Division)    No. 79-1309

Opinion filed December 22, 1980.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Mark S. Komessar, Assistant State's Atttorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

After a jury trial, defendant John Green was found guilty of burglary and sentenced to a term of 14 years. Defendant's appeal pertains solely to the trial court's alleged coercion of the jury. Specifically, the defendant asserts that the trial court: (1) improperly asked the jury foreman to reveal

the numerical division of the jury during its deliberations; (2) gave a prejudicially inaccurate version of the *Prim* charge (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731); and (3) refused to declare a mistrial although 10 jurors revealed, after 11 hours of deliberation, that additional deliberation would not result in a verdict.

We affirm.

Because the defendant's alleged errors refer solely to the trial court's actions during the jury's deliberations, it is sufficient to say that the defendant's burglary charge arose out of a burglary occurring December 20, 1977, in the Chicago city limits. At the trial, the State presented evidence through the testimony of the complaining witness and two police officers. Following closing arguments the court instructed the jury and the jury began its deliberations.

The defendant first argues that it was reversible error for the trial court to ask the jury foreman to reveal how the jury was divided. The defendant states that under *Crist v. Bretz* (1978), 437 U.S. 28, 57 L. Ed. 2d 24, 98 S. Ct. 2156, we are bound by the Supreme Court's holding, in *Brasfield v. United States* (1926), 272 U.S. 448, 71 L. Ed. 345, 47 S. Ct. 135, that it was per se reversible error to require a jury to reveal its numerical division during deliberations. We note that prior to the *Crist* decision the Illinois Supreme Court in *People v. Duszkewycz* (1963), 27 Ill. 2d 257, 189 N.E.2d 299, and *People v. Golub* (1929), 333 Ill. 554, 165 N.E. 196, held that, while it was erroneous to ask for the jury's numerical division, it was not reversible error because it could not be said that the inquiry interfered with the deliberations of the jurors to the prejudice of the defendant or that it hastened the verdict.

Whether the rule set forth in *Golub* is still in effect or whether *Brasfield* is binding after *Crist* was recently addressed in *People v. Kirk* (1979), 76 Ill. App. 3d 459, 394 N.E.2d 1212. In *Kirk*, six hours after the jury began its deliberations, the judge called the jury in and asked them if they could reach a verdict. The foreman asked the court for an additional hour in which to deliberate. The court agreed to this request and gave the jury a *Prim* instruction. (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Two hours later when the jury informed the court it could not come to a verdict, the court asked for the numerical division of the jury. The foreman informed the court that the jury was divided 10 to 2. At this juncture, the court made overnight arrangements for the jury and a verdict was reached the next day. The court, in *Kirk*, held that *Brasfield* was not decided based on a constitutional interpretation but rather as a part of the court's supervisory powers. Consequently, the court held that *Brasfield* was not controlling in a State proceeding under *Crist*. Because

the court concluded that the defendant had failed to show how it had been prejudiced by the court's inquiry, it found that no reversible error had been committed under the *Golub* and *Duszkewycz* authority.

In the instant case, the jury began its deliberations at 11:29 a.m. and at 6:05 p.m. sent a note to the trial judge indicating that it was deadlocked. The court returned the jury to open court and asked the foreman if there was a reasonable probability that continued deliberations would result in a verdict. The foreman responded in the negative. Over defense objection, the court then asked the foreman how many ballots had been taken and how the jury was divided numerically. The foreman informed the court that the jury had voted six times and was divided 10 to 2. We note that the foreman did not indicate whether the majority favored guilt or innocence. The trial court then gave the jury a modified version of the *Prim* instruction. After 4½ more hours of deliberation, the jury was sequestered for the night. A verdict was returned early in the next day's deliberations.

■■ During oral argument, it was asserted that *Kirk* is factually distinguishable from the instant case and that, therefore, the *Brasfield* per se rule must still be followed. In *Kirk*, the defendant points out, a *Prim* instruction rather than a modified *Prim* instruction was given and the jury was "locked up" after nine hours of deliberation and then didn't return a verdict until 3 p.m. the next day, while here the jury was locked up after 11 hours of deliberation and then returned a verdict very early the next day. While we recognize the factual differences between the instant case and *Kirk*, we are not persuaded that such a difference requires us to distinguish *Kirk*. In *Kirk*, the court specifically rejected the argument raised by the defendant here that *Brasfield* requires a per se reversal where a judge makes an inquiry as to a jury's numerical division. Therefore, even under a different set of facts, *Kirk* requires use of the *Golub* rule rather than the per se reversal rule of *Brasfield*. Consideration of the factual difference between *Kirk* and the instant case will be made by considering whether sequestering the jury for the night after giving a modified *Prim* instruction and inquiring as to the jury's numerical division so interfered with the jury's deliberations that it prejudiced the defendant or hastened the verdict. *People v. Prim*; *People v. Duszkewycz* (1963), 27 Ill. 2d 257, 189 N.E.2d 299; *People v. Golub* (1929), 333 Ill. 554, 165 N.E. 196; *People v. Kirk*.

The defendant next complains that the trial court gave an inaccurate recitation of the *Prim* instruction to the deadlocked jury resembling the so-called "dynamite" *Allen* charge (*Allen v. United States* (1896), 164 U.S. 492, 41 L. Ed. 2d 528, 17 S. Ct. 154) criticized by the court in *Prim*. Giving this instruction, the defendant contends, in conjunction with the judge's inquiry as to the division of the jury prejudiced the defendant because the

two minority jurors would have felt that the judge was directly asking them to "heed the majority" rather than make their own independent decision as to the case.

In *Prim* the supreme court, based on its supervisory power, set forth an instruction to be given when a jury is deadlocked to "resolve the many questions created by the uncertainty attendant upon instructing a jury that is in disagreement." (53 Ill. 2d 62, 76.) That instruction provided:

> " 'The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.
>
> It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so *without violence to individual judgment. Each of you must decide the case for yourself, but do so* only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.
>
> You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.' "

(Emphasis added.) (53 Ill. 2d 62, 75-76.)

The court explained that:

> "While acknowledging the possible coercive dangers inherent in a supplemental instruction given to a deadlocked jury, we do not feel that a jury should be left to grope in such circumstances without some guidance from the court. Jurors, and especially those voting in the minority, conceivably could feel a coercive influence if when seeking guidance from the court they are met with stony silence and sent back to the jury room for further deliberation." (53 Ill. 2d 62, 74.)

While the supreme court chose the *Prim* case as the occasion to set out guidelines for instructing deadlocked juries, it is important to note that the court did not find that the trial court in *Prim* committed reversible error by giving an instruction where the language, although not as desirable as the model instruction, nevertheless did not contain "heed the majority" language. Such an instruction, the court held, did not interfere with the jury's deliberations or hasten the verdict.

■■ The record on appeal reveals that the instruction given in the instant case differed from that suggested in *Prim*, except for minor grammatical differences, only in that the italicized words in the above instruction were absent in the trial court's instruction. We do not think that an analysis of

the pertinent instruction shows that it required the minority in the jury to "heed the majority" as did the *Allen* charge. (*People v. Prim*; *People v. Pankey* (1978), 58 Ill. App. 3d 924, 374 N.E.2d 1114.) The language of the instruction given specifically cautioned the jurors not to "surrender your honest convictions to the weight of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict." Moreover, we note that the jury also did not come back with a verdict shortly after the *Prim* instruction was given but rather deliberated another 4½ hours that evening and an unspecified amount of time the next day. This would indicate that the jury felt no coercion from the court's action. (*People v. Allen* (1977), 47 Ill. App. 3d 900, 365 N.E.2d 460; *People v. Drayton* (1972), 7 Ill. App. 3d 812, 288 N.E.2d 922; see *People v. Wilson* (1976), 37 Ill. App. 3d 560, 346 N.E.2d 161.) As such, we do not believe that either of the two jurors, who were in the minority at the time the instruction was given, would have felt coerced by the court's instruction to act in any way other than based on their own convictions. Consequently, we do not find that the trial court's actions interfered with the deliberations of the jurors to the prejudice of the defendant or hastened the jury's verdict. Accordingly, we find no reversible error. *People v. Prim*; *People v. Duszkewycz* (1963), 27 Ill. 2d 257, 189 N.E.2d 299; *People v. Golub* (1929), 333 Ill. 554, 165 N.E. 196; *People v. Pankey*; *People v. Allen.*

The defendant's final argument is that the trial court coerced the verdict of the jury by requiring the jury to be sequestered for the night when, after 11 hours of deliberation, 10 members of the jury informed the court that they did not believe additional deliberation would lead to a verdict. The defendant contends that the trial court's failure to end the jury's deliberations and to declare a mistrial at this time indicated to the minority jurors that they would be kept "locked up" until they changed their vote. The defendant stresses that this result was more probable because of the court's prior action in asking for the numerical division of the jury and giving the deadlocked jury the emasculated *Prim* instruction.

After the trial judge gave the jury the *Prim* instruction at 6:05 p.m. he sent them back to deliberate. At 9:05 p.m. he recalled the jury and again inquired as to the possibility of reaching a verdict. At this time, the jury foreman informed the court that, "There has been movement, sir, I believe it's possible." The jury then returned to further deliberate. At 10:25 p.m. the court again summoned the jury foreman and asked him if the jury could reach a verdict if given more time. The foreman replied, "No, sir." The trial judge then polled the jury asking each juror whether he felt that a verdict could be reached if additional time was given. Ten jurors answered in the negative. The trial court then stated over defense objection:

"Under those conditions then, at this point this Court, in its discretion, will sequester the jury, since there seems to be dissention among the twelve.

You will not deliberate during this sequestration. You will be taken by a bus to a place where you can sleep and eat some food, and then you will be brought back to this court at nine o'clock or thereabouts tomorrow morning. I will then allow you to continue your deliberations.

And hopefully you will arrive at a verdict or whatever. Anyway, thank you and good night. You are now sequestered by order of this Court."

The length of a jury's deliberation is a matter which rests within the sound discretion of the trial court and, therefore, the trial court's judgment will not be disturbed absent a clear abuse of discretion. (*People v. Daily* (1968), 41 Ill. 2d 116, 242 N.E.2d 170, *cert. denied* (1969), 395 U.S. 966, 23 L. Ed. 2d 752, 89 S. Ct. 2112; *People v. Allen* (1977), 47 Ill. App. 3d 900, 365 N.E.2d 460; *People v. Wilson* (1976), 37 Ill. App. 3d 560, 346 N.E.2d 161.) In *Allen*, after the jury had indicated several times through its 9½ hours of deliberation that it was unable to reach a verdict, the court gave the *Prim* instruction. It had already sequestered the jury the night before after the jury had informed the court that it could not reach a verdict. In finding that the facts did not warrant the conclusion that the trial court abused its discretion by requiring the jury to deliberate for an unreasonable amount of time, the court stated the general rule that:

"The question of what length of time it is reasonable to permit deliberations to continue in any case is a matter peculiarly within the discretion of the trial judge. (*People v. Daily* (1968), 41 Ill. 2d 116, 242 N.E.2d 170; *People v. Wilson* (1976), 37 Ill. App. 3d 560, 346 N.E.2d 161; *People v. Bravos* (1969), 114 Ill. App. 2d 298, 252 N.E.2d 776.) The jury's own view of its ability or inability to reach a verdict is but one factor to be considered in the exercise of that discretion. Thus, under proper circumstances, it is within the court's discretion to permit further deliberations after the jury has expressed the view that it is 'hopelessly deadlocked' (*People v. Daily*), or to sequester a jury which has on more than one occasion indicated that it cannot reach a verdict. *People v. Alexander* (1973), 15 Ill. App. 3d 607, 305 N.E.2d 61." 47 Ill. App. 3d 900, 905-06.

■■ Under the circumstances of the instant case, as outlined above, we do not think that the trial court erred in allowing the jury to be sequestered for the evening after 11 hours of deliberation. The defendant alleges that the trial court should have terminated deliberations at this point and that the trial court's failure to so terminate could have caused some jurors to

have believed that failure to reach a verdict would result in continued confinement. We do not think that the import of the court's action coerced the jurors into hastening their verdict. The trial court's concern, as gleaned by his statement to the jury, was that the jurors should be able to get some food and sleep after deliberating for so long. We do not think that the trial court's apparent belief that the jury was exhausted and that food and sleep would aid their deliberation was an abuse of discretion. We note that the jury had made some recent progress in their deliberation after the *Prim* instruction as noted by the foreman at 9:05 p.m. Accordingly, we find no reversible error in the trial court's action either considered separately or in conjunction with the court's earlier actions.

For the aforesaid reasons the conviction and sentence of the defendant, John Green, are affirmed.

Judgment affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.