640 So.2d 1183 (1994)
Horace McKINNEY, a/k/a Robert Johnson, a/k/a Glenn Albert Childs, Appellant,
v.
STATE of Florida, Appellee.
No. 92-03399.
District Court of Appeal of Florida, Second District.
July 27, 1994.
James Marion Moorman, Public Defender, and John S. Lynch, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, Ron Napolitano, Asst. Atty. Gen., Tampa, for appellee.
ALTENBERND, Judge.
Horace McKinney appeals his convictions for sale and possession of cocaine within 1000 feet of a school and for tampering with evidence.[1] We agree with Mr. McKinney that his unsuccessful efforts to swallow a bag of cocaine at the scene of his arrest constitute no more than attempted tampering with the evidence. Although we conclude that the state proved a prima facie case of sale and possession of cocaine near a school, we reverse and remand the cause for a new trial on all three charges because the trial court committed an Allen charge error.
On November 13, 1991, an undercover officer was assigned to buy cocaine in an area near the Lakeland Christian School. Mr. McKinney allegedly approached the officer's vehicle. When the officer asked for a "twenty," Mr. McKinney pulled out a small plastic bag, broke off a piece of cocaine, and gave it to the officer in exchange for a twenty dollar bill. After the sale was completed, Mr. McKinney fled. He stopped near a dumpster when ordered to do so, but struggled with several additional police officers who *1184 approached to arrest him. In the struggle, he attempted to eat the bag of cocaine. One of the officers held his jaw to keep him from swallowing the bag. The bag was retrieved and later introduced into evidence. The marked twenty-dollar bill was found on the dumpster.[2]

I. JUDICIAL NOTICE OF THE SCHOOL
Mr. McKinney first argues the trial court erred in taking judicial notice that Lakeland Christian School is a school for purposes of section 893.13(1)(c), Florida Statutes (1991). Section 90.202(11) permits a court to take judicial notice of "facts that are not subject to dispute because they are generally known within the territorial jurisdiction of the court." Section 90.202(12) permits notice of "facts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." We conclude these provisions authorize the trial court to take judicial notice of the legal status of Lakeland Christian School.
The trial court granted the motion to take judicial notice several months before the trial. At that hearing, defense counsel did not suggest any reason to believe there was a factual question concerning the status of Lakeland Christian School. No such question has been raised at any subsequent time. Indeed, this court has published at least one opinion in which Lakeland Christian School was the school relied upon for purposes of this statute. Stamps v. State, 620 So.2d 1033 (Fla. 2d DCA 1993).
We recognize that a judge cannot use sections 90.202(11) and (12) to take notice of matters known to the judge, as compared to matters known in the community. See Amos v. Moseley, 74 Fla. 555, 77 So. 619 (1917); State v. Arroyo, 422 So.2d 50, 53 n. 2 (Fla. 3d DCA 1982); Charles W. Ehrhardt, Florida Evidence § 202.11, at 51-52 (1994 ed.); see also Forbes v. Bushnell Steel Constr. Co., 76 So.2d 268 (Fla. 1954) (personal knowledge of trial judge is not sufficient predicate for entry of final decree). Likewise, a judge should not take judicial notice of evidence relating to an important issue in a criminal case merely because such evidence is accurate from the judge's perspective. See McDaniels v. State, 388 So.2d 259 (Fla. 5th DCA 1980). In this case, however, the status of Lakeland Christian School is a mixed question of fact and law in which the legal issues predominate. Especially when the status of the school has been previously established in another case and is well known within the jurors' community, the trial judge should not be compelled to force the school's principal to spend his or her valuable time at the courthouse confirming a status that no one seriously contests. See Grand Lodge, Knights of Pythias, of North America, South America, Europe, Asia, Africa, and Australia, Jurisdiction of Florida v. Moore, 120 Fla. 761, 163 So. 108 (1935) (fact that organization was a fraternal benefit society could be judicially noticed); Graves v. State, 587 So.2d 633 (Fla. 3d DCA 1991) (court could take judicial notice of survey map in prosecution for selling drugs within 1000 feet of a school).

II. PROOF OF PROXIMITY TO THE SCHOOL
Although the trial court took judicial notice of the status of the school, it did not take judicial notice of the school's boundaries or of the distance between the school and where Mr. McKinney sold the cocaine. The state called a surveyor to establish these elements. Mr. McKinney maintains that the surveyor's testimony was insufficient to establish that the crime occurred within 1000 feet of the school. Although Stamps involved the same issue and the same school, the evidence from the surveyor is different in this case. This surveyor measured from the soccer field, instead of a remote parking lot, and determined the total distance to be approximately 500 feet. Thus, the jury had sufficient evidence to decide whether the events took place within 1000 feet of the school. Accordingly, we hold that the trial court properly submitted the two drug offenses to the jury.

*1185 III. TAMPERING WITH THE EVIDENCE
Chapter 918, Florida Statutes, governs the "Conduct of Trial." Despite the general subject matter of the chapter, section 918.13(1), Florida Statutes (1991), states:
No person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, shall:
a) Alter, destroy, conceal, or remove any record, document, or thing with the purpose to impair its verity or availability in such proceeding or investigation; or
(b) Make, present, or use any record, document, or thing, knowing it to be false.
Thus, this statute criminalizes conduct that occurs long before a trial.
In recent years, the state has begun to use section 918.13 to prosecute a person for concealing or destroying drugs during an arrest occurring on streets and in other public places. It is doubtful that the legislature considered this context when enacting the statute. The state's invocation of this crime in close cases has forced the judiciary to make some fine distinctions depending on the facts of each case. This case is probably another example of that trend.
In Boice v. State, 560 So.2d 1383 (Fla. 2d DCA 1990), this court held that a defendant who threw a bag of cocaine a short distance out the window of his stopped car, while surrounded by police, did not commit tampering when the bag was recovered. In Thomas v. State, 581 So.2d 993 (Fla. 2d DCA 1991), we extended Boice to an investigatory stop in a bar when the defendant threw a plastic bag on the floor and tried to run. The police were unable to locate the bag, which the defendant claimed was filled with "only marijuana." Id. at 994. In both cases, we concluded the state had failed to prove that the defendant intentionally altered, destroyed, concealed or removed the cocaine for the requisite purpose.
In Jones v. State, 590 So.2d 982 (Fla. 1st DCA 1991), the First District reached a similar result where a defendant allegedly stuffed his hand and a piece of paper containing cocaine into his pocket. A policeman had ordered Mr. Jones to give him the paper. After a struggle the paper was not located.
By contrast, in Gilbert v. State, 19 Fla. L. Weekly D1138, 1994 WL 195496 (Fla. 2d DCA May 18, 1994), we affirmed a conviction for tampering with evidence when the defendant took a bag of marijuana from a vehicle after the police had obtained possession of the bag. Although the defendant's acts did not alter or destroy the evidence, the state's proof permitted a finding that the defendant had "removed" the physical evidence with the purpose of impairing its availability for use in the investigation.
In McKenzie v. State, 632 So.2d 276 (Fla. 4th DCA 1994), the Fourth District held that a man who swallowed cocaine after being arrested could be convicted of tampering with evidence. In that case, the swallowing of the cocaine resulted in its destruction. Thus, that holding appears consistent with the earlier cases in this district and the First District.
Finally, in Hayes v. State, 634 So.2d 1153 (Fla. 4th DCA 1994), the court held that a person who drops a baggie of cocaine into a drainage outlet while being pursued by police commits tampering. In such a case, the defendant arguably completes the act of removing the physical evidence, even though the evidence is eventually recovered.
The charges against Mr. McKinney are similar to those in McKenzie, except that the drugs were removed from Mr. McKinney's mouth. The drugs were introduced into evidence at the trial. Thus, under the state's best evidence, Mr. McKinney attempted to alter or destroy evidence, but was unsuccessful. Unlike the defendant in Hayes, his actions did not complete a removal of the drugs. It is difficult to define precisely when an act constitutes the completed offense of concealment or removal, but a brief interruption of a police officer's visual contact with physical evidence that is on or near one's body is not sufficient to constitute concealment.
*1186 Mr. McKinney is not entitled to a complete acquittal on this charge. We do agree with his argument that the proper offense is attempted tampering with evidence. If the jury concluded that he was trying to swallow the cocaine for the requisite purpose, it could find him guilty of attempted tampering. Cf. State v. Casimono, 250 N.J. Super. 173, 593 A.2d 827 (1991) (retrieving box of drugs from car and throwing it over guardrail can be attempted tampering under New Jersey statute), cert. denied, 127 N.J. 558, 606 A.2d 370 (1992), cert. denied, ___ U.S. ___, 112 S.Ct. 1978, 118 L.Ed.2d 577 (1992). Accordingly, on retrial, the charge must be reduced to attempt.

IV. THE ALLEN CHARGE
Finally, Mr. McKinney argues that the trial court erred while instructing the jury on the Allen charge.[3] We agree that the trial court erred by asking the foreperson how the jury was split before providing the Allen charge. We also agree that it erred by omitting two significant portions of the standard charge after agreeing to give that charge verbatim.
The jury deliberated for several hours before it sent a note to the court indicating that it had reached an impasse.[4] Outside the presence of the jury, the trial judge conferenced with the attorneys and they agreed that the trial court should give the standard Allen charge. Fla.Std. Jury Instr. (Crim.) [48b]. Before giving the charge, the judge polled the jury as to its division. The critical portion of the transcript states:
THE COURT: Who's the foreman? (Mr. Wingham raised his hand.)
THE COURT: Mr. Wingham, I have been informed that the jury is not able to reach a verdict. Is that right?
MR. WINGHAM: That's right, your honor.
THE COURT: I don't want to know names but can you tell me how the jury is split? That is three-three, four-two?
MR. WINGHAM: It was five-one to convict.
THE COURT: OK. I know that you have worked hard to reach a verdict in this case. Apparently it's been impossible for you to do so.
At this point, the defense attorney requested to approach the bench, but his request was denied. Thereafter, in open court, defense counsel simply announced his objection to the Allen charge being given at that time. The trial court overruled the objection, and read a modified version of the standard charge.
In fairness to the trial court, most of the modifications were efforts to make the instruction more colloquial and easier for the jury to follow. The alterations, however, omitted two important aspects of this instruction. First, the standard instruction reads, in part: "I have only one request of you. By law, I cannot demand this of you, but I want you to go back into the jury room. Then, taking turns, tell each of the other jurors about any weakness of your own position." The instruction actually given was similar, but it omitted the underlined phrase. The standard instruction ends with the statement: "After you have done that, if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mistried, and will discharge you with my sincere appreciation for your services."[5] The trial court's modified instruction omits the underlined phrase and adds, "Do you have any questions?"
It is well-established that the trial court in a criminal case may give the standard Allen *1187 charge in the event of a jury deadlock. As explained in Judge Hubbard's thorough opinion in Warren v. State, 498 So.2d 472 (Fla. 3d DCA 1986), review denied, 503 So.2d 328 (Fla. 1987), appellate courts carefully examine any deviation from the standardized procedure. The fear is that members of a deadlocked jury will improperly interpret the judge's words and actions as support for some position on the merits of the case. There is also great concern that some jurors will place undue significance on events during an Allen charge and will use those events to overcome the conscientious convictions of a juror who is pressured to agree simply for the sake of a verdict. Thus, a judge must be especially cautious during an Allen charge to insure that his or her words and actions do not improperly affect the jury's deliberations. See Bass v. State, 611 So.2d 611 (Fla. 2d DCA 1993).
In Lewis v. State, 369 So.2d 667 (Fla. 2d DCA 1979), this court reversed for a new trial because the modified Allen charge specifically included a reference to the fact that only one juror was in disagreement. On the other hand, in McElrath v. State, 516 So.2d 276 (Fla. 2d DCA 1987), we upheld a verdict after the judge read aloud the jury's own note that voluntarily revealed the numerical split among the jurors. Thus, the events in this case fall somewhere in between Lewis and McElrath.
In McElrath, this court emphasized that the trial court's error was offset by portions of the standard instruction that were omitted in this case. Because the polling of the jury was coupled with the non-standard Allen instruction, we conclude that the error was not harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Cf. Rodriguez v. State, 559 So.2d 678 (Fla. 3d DCA 1990) (implying that such polling before an Allen instruction may be per se reversible error).
Reversed and remanded.
SCHOONOVER, A.C.J., and BLUE, J., concur.
NOTES
[1] § 893.13(1)(e), Fla. Stat. (1991); § 918.13, Fla. Stat. (1991).
[2] The state also charged the defendant with resisting an officer without violence. He pleaded no contest to that charge. That conviction is not affected by this opinion.
[3] Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).
[4] Our record does not include the note. Moreover, the record does not clearly establish the amount of time between the start of jury deliberations and the jury's communication. We have relied upon the representations in the defendant's motion for new trial that the initial deliberations lasted for several hours. Trial courts do not use a consistent method to record the times involved in jury deliberations. Some court reporters add this information to their transcripts. Some court clerks record these times in the minutes of the trial. It would be helpful to an appellate court's review if the trial judge or one of the participating attorneys stated the time when the members of the jury are sent to deliberate and any other subsequent times pertinent to their deliberation.
[5] There must be times when this instruction may not accurately reflect the judge's personal sincerity. The appreciation, however, is sincere if examined from the perspective of the judge as a representative of the judiciary.